UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ZAN PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:14-cv-01085-LJM-MJD |
| | ) | |
| CAROLYN COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Zan Payne ("Payne") requests judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security (the "Commissioner"), which denied Payne's application for Supplemental Security Income ("SSI") benefits under title XVI of the Social Security Act, 42 U.S.C. § 1382c.

Payne argues that the ALJ improperly discredited Payne's treating physician. The Commissioner denies that the ALJ erred in any way.

### I. BACKGROUND

### A. PROCEDURAL HISTORY

Payne filed for SSI alleging disability on December 6, 2011. Dkt. No. 12-2, at 19[1]. The claim was denied on March 21, 2011, and again upon reconsideration on April 19, 2012. *Id.* Payne filed a request for a hearing in front of an administrative law judge ("ALJ") on May 1, 2012, pursuant to 20 C.F.R. § 416.1429, which was granted. *Id.* The hearing

---

[1] All citations herein will be to the Docket No. and ECF page number from the upper right-hand corner of the document.

was held on April 16, 2013. *Id.* Michael L. Blankenship, an impartial vocational expert ("VE") appeared at the hearing; Payne was represented by attorney Michael G. Myers. *Id.*

After the hearing, the ALJ found that Payne has a disability, but that medical evidence showed that his substance abuse disorders are "a contributing factor material to the determination of disability under section 1614(a)(3)(j) of the Social Security Act," therefore voiding the disability claim. *Id.* Pursuant to that statute, the ALJ denied his application, concluding that Payne was not under a disability according to the Social Security Act at any time since the date of his application through the date of her decision. *Id.*

### B.  AGE, EDUCATION, WORK HISTORY & PAYNE'S PERCEPTION OF HIS IMPAIRMENTS

At the hearing, Payne testified that he was born in November, 1968. Dkt. No. 12-2 at 39. He was 43 years old at the time he initially filed for SSI in December, 2011, and 44 years old at the time of the hearing. He also testified that he finished the eighth grade, but failed to attain his GED. Dkt. No. 12-2 at 40. He last worked five or six years prior to the hearing. *Id.* His work history includes employment at a foundry, a McDonald's, and most substantially, at Progress Holding as a laundry technician. Dkt. No. 12-2 at 41.

Payne testified that his treatment at Gallahue Mental Health Services ("Gallahue"), which began in 2011, includes one-hour dual diagnosis group sessions three times per week, meetings with a social worker twice per week, in-home meetings with a care coordinator once per week, and medicine checks with his doctor or advanced practice registered nurse once per month. Dkt. No. 12-2, 44-47.

Payne testified that he has lived with his girlfriend, who is also his son's mother, Anita Sanford ("Sanford"), for ten years. Dkt. No. 12-2, at 42-43. He testified that she maintains the house, does all of the household shopping, reminds him to shower and shave, and tells him what to wear. Dkt. No. 12-2, at 55-56. Payne stated that his care coordinator helps him make sure he has his other needs covered, such as working with Sanford to pay the rent and keeping his anger in check. Dkt. No. 12-2, at 56.

Payne testified that he struggles with anger outbursts triggered by paranoia and by voices in his head. Dkt. No. 12-2, at 58. He testified that he has trouble following what is going on in television shows. Dkt. No. 12-2, at 60. Payne does not have a driver's license and testified that he would have difficulty maintaining a regular schedule and would get lost without help. Dkt. No. 12-2, at 62.

Payne testified that he started taking Invega as soon as he began treatment at Gallahue. Dkt. No. 12-2, at 43. Invega is the only medication he has taken for his symptoms, but Payne recently switched from taking Invega in pill form to receiving monthly injections after his arrest for operating a scooter while intoxicated. Dkt. No. 12-2, at 47. Because of this arrest, he has to take three breathalyzer tests daily and has stopped drinking entirely. *Id.* Prior to that arrest, Payne testified that he was drinking "almost every day," dkt. No. 12-2, at 52; and felt the pill was not helping. Dkt. No. 12-2, at 47. He also admitted that he was not taking his pill every day as instructed while drinking and was often turned away from the dual diagnosis group sessions for having alcohol on his breath. Dkt. No. 12-2, at 53. Payne testified that since beginning the injections a month prior to the hearing (and beginning the breathalyzer tests), his symptoms have improved "somewhat." Dkt. No. 12-2, at 60.

At an April 4, 2013, Gallahue dual diagnosis group session, Payne reported feeling "great" after one month of sobriety and noted how his anger outbursts had "greatly decreased" since getting sober. Dkt. No. 12-9, at 7. He also reflected on how his drinking had contributed to his past behaviors. *Id.*

### C. RELEVANT MEDICAL EVIDENCE

#### 1. Treatment Records

Payne began seeking medical help for his psychiatric symptoms while incarcerated in October, 2011. Dkt. No. 12-7, at 5. After his release, he immediately sought treatment at Gallahue and first saw his treating physician, psychiatrist Douglas Cook, M.D. ("Dr. Cook"), as well as Guy R. Walling ("Walling"), an advanced practice registered nurse, on December 8, 2011. Dkt. No. 12-7, at 146. They prescribed him Invega to address his diagnosis of paranoid type schizophrenia. Dkt. No. 12-7, at 38-40. They also diagnosed him with polysubstance dependence. *Id.* Payne saw either Dr. Cook, but more often Walling, each month thereafter for a medication management checkup as part of the Gallahue treatment program described above. Dkt. No. 12-2, 44-47.

On April 8, 2013, Dr. Cook and Walling completed a medical statement regarding Payne's mental residual functional capacity ("RFC"). Dkt. No. 12-7, at 146. They reported that Payne had no "deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work setting or elsewhere)." Dkt. No. 12-7, at 147. But that he had experienced "repeated episodes of deterioration or decompensation in work or work-like settings." *Id.* Additionally, they reported that he was "Markedly Impaired" in the following abilities, among others: "to remember locations and work-like procedures;" "to understand and remember short and simple instructions;" "to

4

maintain attention and concentration for extended periods;" "to sustain an ordinary routine without special supervision;" "to respond appropriately to changes in the work setting;" "to travel in unfamiliar places or use public transportation." Dkt. No. 12-7, at 147-148. Dr. Cook and Walling concluded that Payne would likely be absent more than four days per month as a result of his impairment or treatment. Dkt. No. 12-7, at 148. Both Dr. Cook and Walling signed the report. *Id.*

### 2. Social Security Administration Consultative Exams

Reviewing state agency psychologist Kari Kennedy, Psy. D. ("Dr. Kennedy") completed a mental RFC assessment on February 3, 2012. Dkt. No. 12-7, at 86. Based on "the totality of the evidence in [the] file," she found that Payne was "Not Significantly Limited" in the following abilities, among others: "to remember locations and work-like procedures;" "to understand and remember very short and simple instructions; "to sustain an ordinary routine without special supervision;" "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;" "to ask simple questions or request assistance;" "to travel in unfamiliar places or use public transportation." Dkt. No. 12-7, at 86-88.

Dr. Kennedy also pointed out that, based on the record, Payne was able to perform household tasks, prepare simple meals, go out alone, work on cars, and handle changes in his routine. Dkt. No. 12-7, at 88. Dr. Kennedy stated the totality of the evidence suggested that Payne was capable of unskilled work, although he may prefer a position that requires minimal interaction with others. *Id.*

This assessment was affirmed by state agency psychologist Joelle J. Larsen, Ph.D. on April 19, 2012. Dkt. No. 12-7, at 138.

### D. VOCATIONAL EXPERT TESTIMONY

The VE testified that Payne had three relevant past job titles, all of which were unskilled with Specific Vocational Preparation levels of two: foundry worker, DOT #519.687-022, heavy job; fast food worker, DOT #311.472-010, light job; and laundry worker, DOT #361.687-018; medium job. Dkt. No. 12-2, at 65.

The ALJ then described a hypothetical individual and asked the VE to consider the RFC of the individual in the context of Payne's past relevant work:

> [A]n individual capable of a full range of work; however, the individual has the mental capacity to understand, remember, and follow simple instructions. And within those parameters, in the context of performing simple, routine, repetitive, concrete, tangible tasks, the individual's able to sustain attention and concentration skills sufficient to carry out work-like tasks, with reasonable pace and persistence; but should also be limited to only occasional transactional interaction with the public.

Dkt. No. 12-2, at 65-66. The VE responded that that foundry and laundry worker would both fall within the hypothetical, as well as many other jobs in Indiana, including machine feeder, hand packager, and house keeper. Dkt. No. 12-2, at 66. The hypothetical individual could not, however, perform the fast food work job with the given RFC. *Id.* The ALJ then altered the hypothetical to an individual who should be limited to "only brief, superficial interaction with co-workers, supervisors, and the general public." *Id.* The VE testified this would not change his answer. *Id.*

The VE then testified that an individual cannot, however, maintain employment in any of these jobs if they must miss one day per month of work on an ongoing basis. *Id.*

## E. RELEVANT ASPECTS OF THE ALJ'S DECISION

The ALJ ruled that Payne's substance abuse was a contributing factor material to his disability, meaning he was not disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.935. Dkt. No. 12-2, at 30. In making this key determination, the ALJ considered medical evidence regarding Payne's capacity from both the treating physician and the state agency medical consultants, ultimately assigning no weight to the medical source statement completed by the treating physician. Payne challenges this conclusion.

## II. STANDARD

To be eligible for SSI, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

III. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

IV. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

V. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

7

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234.

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors [her] ultimate conclusion, but must articulate, at some minimum level, [her] analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young*

8

*v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of her analysis enables the Court to "assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III. ANALYSIS

The Court must determine whether or not substantial evidence supports the ALJ's decision to rely on the state agency medical consultant's assessment of Payne's RFC and to reject that of the treating physician. 42 U.S.C. § 405(g). This decision led her to find that Payne was not disabled within the meaning of the Social Security Act and could return to his past relevant work as a laundry technician if he continued to abstain from substance abuse under 20 C.F.R. § 416.935.

In sum, the state agency medical consultant's assessment, conducted in February, 2012, found no significant impairment in Payne's ability to remember locations, simple instructions, or maintain concentration. Dkt. No. 12-7, at 86-87. The treating physician's assessment, conducted in April, 2013, found marked impairment in almost all the same areas of mental functioning. Dkt. No. 12-7, at 147-148. The treating physician concluded that Payne's impairments and treatment would result in his absence more than four days per month, Dkt. No. 12-7, at 148; which the VE specifically stated would prevent all types of employment. Dkt. No. 12-2, at 66.

Generally, a treating medical source's opinion receives controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927. If a treating source does not receive controlling weight, the ALJ must provide "good reasons" for discrediting that source. *Id.*

9

Here, the ALJ's "good reasons" for discrediting the treating physician's medical source statement are internal inconsistencies in the treating physician's RFC assessment, inconsistencies between the RFC assessment and the record as a whole, and the treating physician's reliance on the patient's subjective complaints to support the assessment, rather than acceptable medical evidence.

The ALJ made the following findings regarding internal inconsistencies in the treating physician's assessment: page one of the assessment states that Payne has "[d]ifficulty concentrating or thinking," while page two states Payne has no "[d]eficiencies of concentration, persistence or pace …." Dkt. No. 12-7, at 146-147. Page two then states that Payne has a marked impairment in "[t]he ability to maintain attention and concentration for extended periods." Dkt. No. 12-7, at 147. This is a clear inconsistency as to Payne's mental capacity, specifically his ability to concentrate.

Regarding inconsistencies with the record as a whole and reliance on the patient's subjective complaints, the ALJ made the following findings: the assessment states that Payne has been subject to "repeated episodes of deterioration of decompensation in work or work-like setting . . .," Dkt. No. 12-7, at 147; but these types of episodes are absent from the record and are inconsistent with Payne's previously documented symptoms. The treating physician's apparent belief in these episodes merely parrot Payne's subjective complaints because no clinical evidence is offered in support of this assessment. *Id.* Further, the Court notes that Payne did not work or engage in a "work-like setting," *id.*, at any point during his seventeen month relationship with the treating physician, which also supports the ALJ's conclusion that the treating physician's assessment was inconsistent with treatment notes.

Payne argues that the ALJ erred because she did not address every factor listed in 20 C.F.R. § 416.927 for discrediting a treating source's opinion, but an exhaustive factors analysis is not required where the ALJ provides "good reasons" and the standard of review is deferential. An ALJ's decision will be upheld so long as her reasons for discounting a treating physician's opinion are "minimally articulated." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)). This standard is exceeded here. The ALJ did not summarily dismiss the factors. Rather, as discussed above, she addressed the lack of medical support for the treating physician's opinion and the lack of consistency with the record as a whole in accordance with 20 C.F.R. §§ 416.927(c)(3) and (4). Additionally, in recognition of the treating physician's specialization, 20 C.F.R. §§ 416.927(c)(5), the ALJ did not discard his opinion entirely because she accepted his diagnosis of paranoid schizophrenia and symptoms associated with that diagnosis. Dkt. No. 12-2, at 21. She simply ruled that based on the totality of the evidence, this disability, with proper treatment, is not sufficiently disabling without substance abuse under 20 U.S.C. § 416.935(b)(2).

The ALJ's decision to give more weight to the state agency medical consultant's RFC assessment, which recognized Payne's paranoid schizophrenia diagnosis, rests on substantial evidence, including careful consideration of objective medical records and Payne's own statements and testimony. By addressing the factors of inconsistency and lack of support, the ALJ adequately provided "good reasons," supported by substantial evidence, for discrediting the treating physician's evaluation. 20 C.F.R. § 416.927. Further, the VE testified that an individual with the ALJ's proposed RFC could perform Payne's past relevant work as a laundry technician. This finding led the ALJ to conclude

properly that Payne could return to this work if he could abstain from substance abuse pursuant to 20 C.F.C. § 416.935.

## IV. CONCLUSION

For the reasons stated herein, the Court **AFFIRMS** the decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security. The Court shall enter judgment accordingly.

IT IS SO ORDERED this 17th day of June, 2015.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michael G. Myers
mgmyers10@sbcglobal.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov